UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ARTHUR J. ROUSE, et al.,

        Plaintiffs,

vs.

HEIDI E. WASHINGTON, et al.,

        Defendants.

Civil Action No.
20-cv-11409

HON. MARK A. GOLDSMITH

_____/

### OPINION & ORDER
### (1) GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS (Dkt. 87), (2) GRANTING IN PART AND DENYING IN PART PLAINTIFFS' AMENDED MOTION TO CERTIFY CLASS (Dkt. 77), AND (3) DENYING AS MOOT PLAINTIFFS' ORIGINAL MOTION TO CERTIFY CLASS (Dkt. 60)

Plaintiffs bring this putative class action pursuant 42 U.S.C. § 1983 against named Defendants, Heidi Washington, Malinda Braman, Dave Shaver, and Lee McRoberts, and several unnamed Defendants, all current or former employees of either the Michigan Department of Corrections (MDOC) or Southern Michigan Temporary Facility (SMT).  Plaintiffs allege that (i) Defendants failed to implement adequate preventative measures to protect SMT inmates from COVID-19, in violation of Plaintiffs' Eighth Amendment rights, and, (ii) MDOC's COVID-19 restrictions hindered inmates' access to the prison law library and their lawyers, in violation of Plaintiffs' Sixth Amendment rights.[1]  Plaintiffs bring their Eighth Amendment and Sixth Amendment claims against Defendants "in their individual capacities for the requested monetary

---

[1] Plaintiffs bring their claims pursuant to the Fourteenth Amendment, which incorporates against the states various individual freedoms set forth in the Bill of Rights, such as the Eighth Amendment's protection against "cruel and unusual punishment," Robinson v. California, 370 U.S. 660, 666 (1962), as well as the Sixth Amendment's guarantee of the right to counsel in criminal prosecutions, Gideon v. Wainwright, 372 U.S. 335, 345 (1963).

relief and official capacities for the requested injunctive relief." 2d Am. Compl. ¶ 5 (Dkt. 80).[2]

This matter is now before the Court on the named Defendants' motion to dismiss Plaintiffs' second amended complaint (Dkt. 87) as well as Plaintiffs' amended motion to appoint class counsel and certify a class (Dkt. 77).[3] Plaintiffs seek certification of a class action involving their Eighth and Sixth Amendment claims against Defendants and consisting of a class definition of MDOC prisoners incarcerated at SMT on or after March 13, 2020.

The motion to dismiss is granted in part and denied in part. Although Plaintiffs have sufficiently pleaded Eighth Amendment claims against the named Defendants in their official capacities, Plaintiffs have not sufficiently pleaded Sixth Amendment claims or claims against the named Defendants in their individual capacities. Thus, as to the named Defendants, only Plaintiffs' Eighth Amendment official capacity claims for injunctive and declaratory relief survive the motion to dismiss.[4]

The motion to appoint class counsel and certify a class is also granted in part and denied in part. Specifically, the Court will certify a class action involving the Eighth Amendment claims seeking injunctive and declaratory relief against the named Defendants in their official capacities. Because any injunctive relief granted would inherently only inure to the benefit of those prisoners who remain incarcerated at SMT at the conclusion of this lawsuit, the Court will limit the class definition to all persons who were incarcerated within SMT on or after March 13, 2020 and remain

---

[2] Plaintiffs also seek declaratory relief. See 2d Am. Compl. at 24–25. However, Plaintiffs do not specify whether they seek declaratory from Defendants in their individual or official capacities.

[3] Plaintiffs filed an original motion to certify class (Dkt. 60) before filing their amended (Dkt. 77). Plaintiffs' original motion to certify class (Dkt. 60) is denied as moot.

[4] The Court's ruling is confined to the claims against the named Defendants; only these Defendants have moved to dismiss Plaintiffs' claims. The unnamed Defendants are yet to be identified and, as such, have not moved for dismissal.

incarcerated at SMT as of the date that this action is dismissed or the date that judgment is entered. The motion to certify a class is denied as moot insofar as it seeks to certify a class action including the dismissed claims. Additionally, the motion to certify a class is denied as premature to the extent that it seeks to certify a class action against the unnamed Defendants. Finally, the motion is granted as to Plaintiffs' request to appoint class counsel.

## I. BACKGROUND

Plaintiffs and the putative class members are or were MDOC prisoners during the time period beginning March 13, 2020 through the current date, housed within the SMT Facility located in Jackson, Michigan. 2d Am. Compl. ¶ 1 (Dkt. 80). Defendant Washington is the current Director of MDOC, Defendant Shaver is the current warden of SMT, Defendant Braman is the former warden of SMT, and Defendant McRoberts is the current deputy warden of SMT. Id. ¶¶ 2–3. The other Defendants "are unnamed persons who engaged in the conduct complained of herein, including but not limited to corrections officers working at SMT during the time period at issue." Id. ¶ 4.[5]

Plaintiffs' claims arise from Defendants' response to the COVID-19 pandemic. Plaintiffs allege that Defendants' (i) failure to protect the inmates from contracting COVID-19 and (ii) failure to provide adequate environmental conditions at SMT to safeguard against COVID-19 is commensurate with cruel and unusual punishment, in violation of the Eighth and Fourteenth

---

[5] On May 11, 2021, the Court issued a show cause order directing Plaintiffs to show cause why this matter should not be dismissed without prejudice as to the unnamed Defendants for failure to comply with Federal Rule of Civil Procedure 4(m)'s requirement that plaintiffs serve defendants within 90 days of filing a complaint (Dkt. 98). In their response to the show cause order, Plaintiffs represent that they have not been able to identify and serve these Defendants due to a lack of discovery and, further, Plaintiffs ask the Court to permit them to amend their complaint to incorporate the identities of the unnamed Defendants once they have been identified through discovery (Dkt. 99).

Amendments.  Id. ¶¶ 92–99.  Specifically, Plaintiffs allege that throughout the pandemic, Defendants have failed to enforce mask-wearing, isolate inmates with COVID-19, institute contact tracing and social distancing, supply inmates with adequate amounts of hand soap or any hand sanitizer, perform sanitization of common areas, provide inmates with supplies to clean their private cells, provide inmates with a safe method to launder cloth masks, and minimize crowds. Id. ¶¶ 28–43.  These failures allegedly increased Plaintiffs' risks of contracting the virus and suffering illness or death therefrom.

In addition, Plaintiffs allege that (i) Defendants' practice of limiting access to the prison law library and (ii) Defendants' practice of limiting Plaintiffs' access to confidential attorney consultations constitutes a denial of access to justice, in violation of Plaintiffs' Sixth Amendment and Fourteenth Amendment rights.  Id. ¶¶ 100–102.  Regarding access to the law library, Plaintiffs allege that, as a COVID-19 precaution, Defendants have limited the law library's hours of operation as well as the number of prisoners who may access the law library at any given time.  Id. ¶¶ 51, 58–59.  Specifically, access to the law library is limited to 13 prisoners per time slot with three time slots per day.  Id. ¶ 59.  A prisoner may only access the law library if he has a pending case with impending deadlines.  Id.

Regarding confidential attorney consultations, Plaintiffs allege that, since the onset of COVID-19, Defendants have instituted a policy that restricts all in-person visits.  Id. ¶ 62.  Further, the prison email system, JPAY, has not been updated to allow for timely confidential attorney communication via email.  Id.  "Thusly," Plaintiffs conclude, "the only methods available for attorney/client communication that may be confidential is phone calls to the extent the prison will facilitate same and leave the prisoner unguarded during same; and USPS letter to the extent same gets delivered unopened and timely."  Id.

## II.  STANDARD OF DECISION

### A.  Motion to Dismiss

On a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), "[t]he defendant has the burden of showing that the plaintiff has failed to state a claim for relief." Directv, Inc. v. Treesh, 487 F.3d 471, 476 (6th Cir. 2007).  To survive a Rule 12(b)(6) motion, the plaintiff must allege sufficient facts to state a claim to relief above the speculative level, such that it is "plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  The plausibility standard requires courts to accept the alleged facts as true, even when their truth is doubtful, and to make all reasonable inferences in favor of the plaintiff.  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Twombly, 550 U.S. at 555–556.

Evaluating a complaint's plausibility is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 556 U.S. at 679.  A complaint that offers no more than "labels and conclusions," a "formulaic recitation of the elements of a cause of action," or "naked assertion[s]" devoid of "further factual enhancement" will not suffice. Id. at 678.  However, a complaint need not contain "detailed factual allegations." Twombly, 550 U.S. at 555.  Rather, a complaint needs only enough facts to suggest that discovery may reveal evidence of illegality, even if the likelihood of finding such evidence is remote.  Id. at 556. Accordingly, a motion to dismiss "should not be granted unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Directv, 487 F.3d at 476.

### B.  Motion for Class Certification

To be certified, a class must satisfy all four of the Rule 23(a) prerequisites—numerosity, commonality, typicality, and adequate representation—and fall within one of the three types of

class actions listed in Rule 23(b). Sprague v. Gen. Motors Corp., 133 F.3d 388, 397 (6th Cir. 1998). "Rule 23 does not set forth a mere pleading standard." Wal-Mart Stores, Inc. v. Dukes, 131 S. Ct. 2541, 2551 (2011). Meeting the requirements of "Rule 23(a) requires something more than mere repetition of the rule's language; '[t]here must be an adequate statement of the basic facts to indicate that each requirement of the rule is fulfilled.'" Pipefitters Local 636 Ins. Fund v. Blue Cross Blue Shield of Mich., 654 F.3d 618, 629 (6th Cir. 2011). The party seeking class certification has the burden to prove the Rule 23 certification requirements. In re Am. Med. Sys., Inc., 75 F.3d 1069, 1079 (6th Cir. 1996). While a court must conduct a rigorous examination of the plaintiffs' request for class certification, the court ultimately has broad discretion as to whether it is appropriate to certify the class proposed by the plaintiffs or some portion thereof. See In re Whirlpool Corp. Front-Loading Washer Prods. Liability Litig., 722 F.3d 838, 850 (6th Cir. 2013).

## III. ANALYSIS

### A. Motion to Dismiss

Defendants move to dismiss Plaintiffs' second amended complaint, arguing that (i) Plaintiffs' claims against Defendants in their official capacities should be dismissed on sovereign immunity grounds; (ii) Plaintiffs' Sixth Amendment claims should be dismissed because there is no Sixth Amendment right to access a prison law library and, further, Plaintiffs have failed to plead actual injury; (iii) Plaintiffs' Eighth Amendment claim should be dismissed because Defendants' response to COVID-19 was reasonable and, therefore, Plaintiffs cannot prove that Defendants acted with the requisite deliberate indifference; (iv) all of Plaintiffs' § 1983 claims should be dismissed for failure to sufficiently allege the personal involvement of the individual Defendants; and (v) Defendants are entitled to qualified immunity. Defs. Mot. to Dismiss (MTD) at 2–32 (Dkt. 87). For the reasons detailed below, the Court reaches the following conclusions.

Regarding the Eleventh Amendment, sovereign immunity is no bar, because Plaintiffs bring suit against Defendants in their official capacities only for injunctive relief.

With respect to Plaintiffs' Sixth Amendment claims, Defendants are correct that there is no Sixth Amendment right to access a prison law library and that Plaintiffs have failed to allege that they suffered any actual injuries from Defendants' actions limiting inmate access to the law library. Further, Plaintiffs have failed to plead that any pretrial detainees were totally denied access to their attorneys or that the restrictions on their attorney-client communications were inappropriate in light of the pandemic. Likewise, Plaintiffs have failed to plead that any post-conviction detainees suffered actual injuries from the limited access to confidential attorney communications. Accordingly, Plaintiffs' Sixth Amendment claims against Defendants in their individual and official capacities are dismissed.

With respect to Plaintiffs' Eighth Amendment claims, Defendants have plausibly alleged that Defendants acted with deliberate indifference in responding to the COVID-19 pandemic. However, Plaintiffs have not sufficiently alleged the personal involvement of the named Defendants. Accordingly, Plaintiffs' Eighth Amendment claims against the named Defendants in their individual capacities are dismissed.

Finally, because only official-capacity claims remain against the named Defendants, the personal defense of qualified immunity is unavailable to these Defendants. Thus, the named Defendants' motion is denied to the extent it seeks dismissal based on their entitlement to qualified immunity.

### i.  Official Capacity Claims

Generally, state officials, like Defendants, are immune from lawsuits under the Eleventh Amendment when they are sued in their official capacity. Dubuc v. Mich. Bd. of Law Examiners,

342 F.3d 610, 616 (6th Cir. 2003).   The Supreme Court, however, recognized an important exception to this general rule in <u>Ex parte Young</u>, where it held that the Eleventh Amendment does not bar a lawsuit seeking declaratory or injunctive relief against a state official.   209 U.S. 123, 160–162 (1908).   By contrast, "retroactive relief, such as money damages, is not permitted because such relief would require the payment of funds from the state treasury."   <u>Id.</u> (punctuation modified, citation omitted).

Plaintiffs bring this lawsuit "against all Defendants in their individual capacities for the requested monetary relief and official capacities for the requested injunctive relief."   2d Am. Compl. ¶ 5; <u>see also</u> Pls. Resp. to MTD at 2–3 (Dkt. 92).[6]   Because Plaintiffs do not bring suit against Defendants in their official capacities for monetary damages, Plaintiffs' official capacity claims are not barred by the Eleventh Amendment's grant of sovereign immunity.   See <u>Young</u>, 209 U.S. at 160–162.

### ii.  Sixth Amendment Claims

Plaintiffs allege that their right to access the courts was violated by Defendants' policies that restricted access to the prison law library and confidential attorney consultations.   The Court addresses the law library and confidential attorney consultation claims separately.

### a.  Access to Prison Law Library

Access to a prison law library is not a constitutional right in and of itself.   <u>Lewis v. Casey</u>, 518 U.S. 343, 351 (1996).   Nor does it derive from the Sixth Amendment's right to counsel or right to represent oneself.   <u>See United States v. Smith</u>, 907 F. 2d 42, 44 (6th Cir. 1990); <u>Holt v. Pitts</u>, 702 F.2d 639, 640 (6th Cir. 1983).   Rather, a prisoner's right to access a prison law library

---

[6] In addition to seeking monetary and injunctive relief, Plaintiffs seek declaratory relief.   <u>See</u> 2d Am. Compl. at 24.   To the extent that Plaintiffs seek declaratory relief against Defendants in their official capacities, these claims are likewise not barred by the Eleventh Amendment.

is only a means to ensure "a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the courts." Lewis, 518 U.S. at 351.  Where other avenues are available to protect legal rights—such as an attorney representing a criminal defendant—there is no right to library access.  Franklin v. Gilles, 870 F. Supp. 792, 795 (W.D. Mich. 1994).  Thus, a prisoner's access to a law library is judicially protected only insofar as necessary to protect legitimate access to the courts.  See Walker v. Mintzes, 771 F.2d 920, 932 (6th Cir. 1985) (holding that, to state a claim under section 1983, a prisoner must allege that he was actually denied adequate access to the courts, not to the prison law library).

Following Lewis, the Sixth Circuit has held that "a prisoner's right to access the courts extends to direct appeals, habeas corpus applications, and civil rights claims only." Thaddeus-X v. Blatter, 175 F.3d 378, 391 (6th Cir. 1999).  Even in these situations, "[t]here is no constitutional right to any particular number of hours in the law library." Thomas v. Campbell, 12 F. App'x 295, 297 (6th Cir. 2001) (citing Walker, 771 F.2d at 932).  Further, because access to law libraries does not represent a constitutional right in and of itself, prisoners must demonstrate "actual injury" in order to have standing.  Lewis, 518 U.S. at 351.  "Actual injury" does not mean an injury "in some theoretical sense"; it means that prison officials' conduct hindered a prisoner's efforts to pursue a non-frivolous legal claim.  Id. at 351–353.

Here, Plaintiffs only set forth facts arguably demonstrating actual injuries suffered by two class members: (i) "Albert [Robinson] reports that he has lost two civil actions as a direct result of not having access to the law library"; and (ii) "[a]s a direct result of his inability to reasonable access the law library, rulings that are detrimental to [Jason] Ryans' claims in his individual case, have been based upon decisions made on multiple motions which he could not properly redress due to his inability to access the law library." 2d Am. Compl. ¶¶ 53, 55.  The allegations relating

9

to Robinson and Ryans's injuries, however, are insufficient. As to Ryans, Plaintiffs fail to allege how his unrestricted access would have enabled him to "properly" redress the adverse rulings in his case. As to Robinson, Plaintiffs fail to allege how the library restrictions actually caused Robinson to lose his civil cases. Moreover, a letter from Robinson attached to Plaintiffs' second amended complaint actually indicates that he was permitted to access the law library for an average of four hours every five days, thereby contradicting Plaintiffs' allegation that Robinson did not have access to the law library. See 2d Am. Compl. at PageID.1581. Additionally, Plaintiffs fail to plead sufficient facts from which the Court could determine that either Robinson or Ryans was pursuing non-frivolous claims.

Plaintiffs incorrectly brought their law library access claim under the Sixth Amendment and, in any event, have failed to sufficiently allege that they suffered actual injuries as a result of Defendants' alleged restrictions limiting prisoner access to the law library. If anything, it appears that Plaintiffs were likely benefitted by the restrictions, given that such restrictions would help to minimize overcrowding in common areas as called for by COVID-19 safety protocols referenced in Plaintiffs' complaint. Thus, the motion to dismiss is granted as to Plaintiffs' Sixth Amendment claims based on restricted access to the law library.[7]

### b. Access to Confidential Attorney Consultations

Unlike the right to access prison law libraries, the right of the accused "[i]n all criminal prosecutions . . . to have the Assistance of Counsel for his defence" is a direct right grounded squarely in the text of the Sixth Amendment. U.S. Const. amend. VI. However, because the right

---

[7] Even if an individual plaintiff could make out a claim of having been denied access to the courts due to the restrictions placed on access to the law library, the claim would have to be individually evaluated based on the nature of the injury suffered by that particular plaintiff. Such individualized claims would be unsuitable for class treatment. See discussion infra p. 28–29 n.17.

applies "in criminal prosecutions," a prisoner's right to access his counsel varies depending on whether he seeks access to counsel as a pretrial detainee or whether he seeks access to counsel for some other purpose.

There is no abstract, free standing right to full and unfettered access to contact with legal counsel for post-conviction and civil matters. See Lewis, 518 U.S. at 351. As a result, a prisoner seeking to assert restrictions of his access to legal counsel in a post-conviction or civil matter must specifically allege facts that would support a finding that prison officials' conduct inflicted an "actual injury," i.e., that the conduct hindered the prisoner's efforts to pursue a non-frivolous legal claim. Id. at 351–353. Here, Plaintiffs fail to allege any actual injuries that resulted from the restrictions on attorney communications.

By contrast, pretrial detainees—prisoners awaiting criminal trial—are entitled to have access to counsel at critical stages of the criminal proceedings. Thus, in cases involving a violation of a pretrial detainee's Sixth Amendment right to counsel, courts do not apply the "actual injury" standard. Rather, a complete or total deprivation of a pretrial detainee's right to counsel at a critical stage of criminal proceedings gives rise to constitutional error. See United States v. Cronic, 466 US 648, 659 n.25 (1984). Absent a complete or total deprivation, courts apply the standard set forth in Bell v. Wolfish: "the practice must be evaluated in the light of the central objective of prison administration, safeguarding institutional security." 441 U.S. 520, 547 (1979). "Prison officials must be free to take appropriate action to ensure the safety of inmates and corrections personnel and to prevent escape or unauthorized entry." Id.

Plaintiffs do not specify whether any of them are pretrial detainees. Even assuming that some of them are pretrial detainees and, therefore, have a right to counsel squarely rooted in the Sixth Amendment, Plaintiffs do not allege a total deprivation of attorney communications. Rather,

they allege that in-person visits have been "restrict[ed]" while other forms of communication—including mail, email, and telephone—remain available.  2d Am. Compl. ¶ 62.[8]  According to Plaintiffs, at least two of these forms of communication—mail and telephone—provide means for confidential attorney communications.  See id.  Further, Plaintiffs do not allege facts delineating what the restrictions are, such as the length or frequency of permissible visits.  They also do not allege whether additional forms of communication—such as video conferencing—remain available.  Nor do they allege facts showing that the alleged restrictions on in-person attorney communications were inappropriate in light of the need to ensure SMT prisoners' safety from the dangers posed by the COVID-19 pandemic.  To the contrary, Plaintiffs' allegations support the need to place restrictions on visits.  For instance, Plaintiffs allege that COVID-19 preparedness protocols called for minimizing crowds and person-to-person contact.  Id. ¶ 19.  Limiting the number of prison visitors—including attorneys—during the pandemic is consistent with such protocols.

The motion to dismiss is granted as to Plaintiffs' Sixth Amendment claims that are based on restricted access to confidential attorney communications.

### c.  Sixth Amendment Official Capacity Claims

For the reasons discussed above, Plaintiffs have failed to plead any valid cause of action under the Sixth Amendment against Defendants.  Without any underlying violation of the Sixth Amendment, Defendants obviously cannot be held liable in their individual capacities.  Nor can they be held liable in their official capacities.  This is because an official capacity action against a public employee is the functional equivalent of an action against the municipal entity itself.  Leach

---

[8] It is unclear from Plaintiffs' allegation that "the policy restricts all attorney in person visits," 2d Am. Compl. ¶ 62, whether in-person attorney consultations are completely prohibited or, rather, just limited.

12

v. Shelby Cnty. Sheriff, 891 F.2d 1241, 1245 (6th Cir. 1989).  It is well established that a municipality or supervisor cannot be held liable in their official capacity if there is no underlying constitutional violation by any of its officers.  See Ewolski v. City of Brunswick, 287 F.3d 492, 516 (6th Cir. 2002) (citing City of Los Angeles v. Heller, 475 U.S. 796, 799 (1986)).  Because Plaintiffs have failed to plead a valid cause of action under the Sixth Amendment, Plaintiffs' Sixth Amendment claims against Defendants in their official capacities necessarily fail as a matter of law.

### iii.  Eighth Amendment Claims

The named Defendants contend that Plaintiffs cannot prove that the named Defendants acted with deliberate indifference in responding to the risks of harm posed by COVID-19 because the response was reasonable.  Defs. MTD at 10–16.  This merits-oriented argument is ill-suited for resolution on the instant motion to dismiss.  As explained below, Plaintiffs' allegations of deliberate indifference are sufficient to survive Twombly's low pleading standard.

The Eighth Amendment protects prisoners against the imposition of "cruel and unusual punishment."  Conditions of confinement that are cruel and unusual are included in the Eighth Amendment's prohibition.  Farmer v. Brennan, 511 U.S. 825, 834 (1994).  In prison conditions cases, a prison official violates an inmate's rights under the Eighth Amendment if, acting with deliberate indifference, the official exposes the inmate to a substantial risk of harm to the prisoner's health or safety.  Id.  The deliberate indifference framework includes both an objective and subjective prong.  To satisfy the objective prong, an inmate must show "that he is incarcerated under conditions posing a substantial risk of serious harm."  Farmer, 511 U.S. at 834.  Under the subjective prong, an official must know of and disregard an excessive risk to inmate health or safety.  Id. at 837.  "[P]rison officials who actually knew of a substantial risk to inmate health or

13

safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." Id. at 844.

The named Defendants do not argue that Plaintiffs' allegations fail to satisfy the objective prong. Nor would such an argument be successful. See, e.g., Smith v. Dewine, 476 F. Supp. 3d 635, 662 (S.D. Ohio 2020) (agreeing with the multiple courts "across the country who have found COVID-19 to be an objectively intolerable risk of harm to prisoners when it enters a prison"). Rather, the named Defendants argue that Plaintiffs cannot satisfy the subjective prong because the named Defendants responded reasonably to the COVID-19 pandemic.

The named Defendants rely heavily on Wilson v. Williams, which held, in reversing the grant of a preliminary injunction,  that medically vulnerable inmates were not likely to succeed on the merits of their Eighth Amendment claim against prison officials for their allegedly inadequate response to COVID-19, because the officials acted reasonably in responding the pandemic.  961 F.3d 829, 841–844 (6th Cir. 2020).  Certain courts within this circuit have cited Wilson in dismissing complaints brought against prison officials alleging inadequate COVID-19 responses. See, e.g., Brooks v. Washington, No. 2:21-cv-19, 2021 WL 2024706, at *12 (W.D. Mich. May 21, 2021).  While this Court agrees with the view that Wilson raises considerable doubt as to whether Plaintiffs will ultimately be able to succeed on the merits of their Eighth Amendment claims, the Court finds that Defendants' Wilson-based argument is misplaced at the motion to dismiss stage. Unlike the preliminary injunction standard applied in Wilson, which assesses the likelihood of a party's success on the merits, the Rule 12(b)(6) dismissal standard focuses on the sufficiency of a party's pleadings.  Defendants' Wilson-based argument is, therefore, not germane to the present analysis.

Plaintiffs have sufficiently alleged that the named Defendants acted unreasonably in responding to the pandemic.  For instance, Plaintiffs allege that the named Defendants failed to provide Plaintiffs with regular access to hand soap, despite the fact that (i) Governor Gretchen Whitmer's Executive Order 2020-29 regarding MDOC COVID-19 safety protocols called for ensuring inmates' access to soap and water sufficient for regular handwashing, (ii) the Centers for Disease Control and Prevention's interim guidance on COVID-19 in correctional facilities called for providing inmates with a supply of hand soap sufficient to allow frequent handwashing and, (iii) MDOC's COVID-19 preparedness plan called for housing units to maintain an adequate supply of cleaning supplies.  2d Am. Compl. ¶¶ 19–21, 28.

Accordingly, Plaintiffs' complaint is not deficient for failing to plead sufficiently that the named Defendants acted with deliberate indifference.

### iv.  Individual Involvement

In § 1983 suits, "Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior"; rather, a plaintiff bringing such a suit "must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."  Iqbal, 556 U.S. at 676.  The named Defendants argue that Plaintiffs have failed to plead each individual Defendant's personal involvement in the alleged constitutional violations because the amended complaint fails to specify which Defendant did what to whom.  Defs. MTD at 5–6.  In response, Plaintiffs argue that they have adequately alleged the individual involvement of each Defendant by setting forth the duties of each Defendant and by alleging that Defendants collectively failed to take reasonable steps to address the objective risks posed by COVID-19.  Pls. Resp. to MTD at 8–15.  In their reply, the named Defendants argue that laying out the individual job descriptions of each Defendant is insufficient.  Defs. Reply in

15

Support of MTD at 1 (Dkt. 91).  Because Plaintiffs' Sixth Amendment claims are dismissed in their entirety, the Court considers only whether Plaintiffs have sufficiently alleged Defendants' individual involvement in the alleged Eighth Amendment violations.

The Court concludes that Plaintiffs have failed to do so.  Two principles inform the Court's analysis.  First, it is insufficient to make generic or blanket allegations pertaining to "defendants" or allegations lumping together individual defendants.  See Boxill v. O'Grady, 935 F.3d 510, 518 (6th Cir. 2019) (citing Heyne v. Metro. Nashville Pub. Sch., 655 F.3d 556, 564 (6th Cir. 2011)).  Second, mere citation to each individual defendant's job description—without an accompanying allegation showing how each defendant failed to comply with his or her job description—is insufficient.  See, e.g., Poulos v. Annucci, No. 9:18-CV-1279, 2019 WL 6311012, at *8 (N.D.N.Y. Nov. 25, 2019).

Here, Plaintiffs have failed to sufficiently plead the individual involvement of each individual named Defendant.  As to Washington, Plaintiffs provide some allegations to show how she was involved in MDOC's COVID-19 response.  Specifically, Plaintiff allege that after Governor Whitmer declared a state of emergency due to the pandemic, Washington, as the MDOC Director, "provided executive leadership and direction, outlining the many steps being taken under the professional guidance of its Chief Medical Officer (CMO) and in consultation with the Centers for Disease Control and Prevention (CDC) and the Michigan Department of Health and Human Services (MDHHS)."  Id. ¶ 23.[9]  In other words, Plaintiffs allege that Washington was involved in the creation of MDOC's COVID-19 response.  However, the crux of Plaintiffs' complaint is the inadequacy of the implementation and enforcement of MDOC's safety measures—not the creation

---

[9] Plaintiffs also allege that Washington provided Braman with direction on MDOC's COVID-19 response.  2d Am. Compl. ¶ 25.

16

of MDOC's COVID-19 response. In fact, Plaintiffs suggest that MDOC's COVID-19 response was commensurate with Governor Whitmer's Executive Order calling for minimum protections for prisoners and the CDC's interim guidance on the management of COVID-19 in correctional facilities. See id. ¶¶ 19–21.

Moreover, Plaintiffs do not allege how Washington failed to comply with her job duties or was otherwise personally involved in any failure to create an adequate COVID-19 response. Rather, Plaintiffs' only references to Washington's failures are made via allegations that lump Washington together with the other Defendants. For instance, Plaintiffs allege that "Defendants Washington, McRoberts, Shaver and Braman and the Does Corrections Officers, have failed and refused to implement and enforce isolation of Plaintiffs and the putative class during testing after exposure or when symptoms present . . . ." Id. ¶ 36. Such allegations are plainly insufficient to show Washington's personal involvement in the alleged constitutional violations.

As to Braman (the former warden of SMT) and Shaver (the current warden of SMT) Plaintiffs allege the general job description of the warden. Id. ¶¶ 10–11. As to the warden's specific duties within the context of the pandemic, Plaintiffs allege that the warden was responsible for implementing the MDOC's COVID-19 response. Id. ¶¶ 25–26. However, like with Washington, Plaintiffs fail to allege how Braman or Shaver failed to comply with their job duties or otherwise were personally involved in any failure to adequately implement the COVID-19 response measures. Rather, Plaintiffs' only references to Braman and Washington's failures are made via allegations that lump Braman and Washington together with the other Defendants. For instance, Plaintiffs allege that "Defendants Washington, McRoberts, Shaver and Braman and the Does Corrections Officers, have failed and refused to supply hand sanitizer to Plaintiffs . . . ." Id.

¶ 39.  This is insufficient to show how Braman or Shaver were personally involved in the alleged constitutional violations.

Plaintiffs argue in their response to the motion to dismiss that McRoberts, as the deputy warden of SMT, "supervises and controls the inside movements of prisoners, including initial assignment to prison units and transfers within the institution."  Pls. Resp. to MTD at 8–9. However, Plaintiffs make no such allegation in their actual complaint.  Rather, the only reference to McRoberts's job duties in the second amended complaint are allegations that prisoners sent COVID-19-related grievances to McRoberts.  2d Am. Compl. ¶¶ 70, 74.  However, participation in the grievance process is insufficient to show personal involvement in a constitutional violation. See Shehee v. Luttreell, 199 F.3d 295, 300 (6th Cir. 1999); Lee v. Michigan Parole Bd., 104 F. App'x 490, 493 (6th Cir. 2003).  Plaintiffs' only other references to McRoberts are allegations that lump Defendants together, such as: "Defendants Washington, McRoberts, Shaver and Braman and the Does Corrections Officers, have failed and refused to provide Plaintiffs and the putative class a method in which to adequately launder their cloth masks . . . ."  2d Am. Compl. ¶ 42.  These allegations lumping all Defendants together are insufficient to show how McRoberts was personally involved with the alleged Eighth Amendment violations.

Many of the Eighth Amendment violations appear to be based on the actions of SMT corrections officers, who allegedly failed to implement and enforce MDOC's COVID-19 response by, for instance, failing to "break up and separate gatherings of prisoners less than 6 feet apart in common areas," failing to "enforce social distancing or the requirement of wearing masks," and failing to personally "wear masks while on shift."  Id. ¶¶ 31–35.  However, the named Defendants

"may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior." Iqbal, 556 U.S. at 676.[10]

For these reasons, the motion to dismiss based on Plaintiffs' failure to sufficiently allege individual involvement is granted as to the named Defendants.[11]

### v. Qualified Immunity

Qualified immunity shields government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Pearson v. Callahan, 555 U.S. 223, 231 (2009) (punctuation modified). Personal immunity defenses such as qualified immunity are not available to government officials defending against suit only in their official capacities. Kentucky v. Graham, 473 U.S. 159, 166–167 (1985). Because Plaintiffs' claims against the named Defendants in their individual capacities are dismissed, the motion to dismiss is denied as moot to the extent that the named Defendants seek dismissal of the claims based on their entitlement to qualified immunity.

---

[10] Because the motion to dismiss is not brought on behalf of the unnamed Defendants—who are yet to be identified—the Court makes no ruling as to the sufficiency of Plaintiffs' allegations against any individual unnamed Defendant.

[11] Even though Plaintiffs have failed to allege the named Defendants' personal involvement in the constitutional violations, these Defendants' lack of individual involvement is not a basis for dismissing the official capacity claims against them. Hall v. Trump, No. 3:19-cv-00628, 2020 WL 1061885, at *4–5 (M.D. Tenn. Mar. 5, 2020). Accordingly, the Eighth Amendment claims against the named Defendants in their official capacities will not be dismissed for Plaintiffs' failure to allege the personal involvement of Defendants in the Eighth Amendment violations.

### B. Motion for Class Certification

Plaintiffs move for class certification pursuant to Rule 23(a) and (b)(3).[12]  Plaintiffs seek to certify a class consisting of "all persons who were incarcerated within SMT on March 13, 2020 at any time up to and including the date of the fairness hearing or trial."  Pls. Am. Mot. to Certify at 10.

As an initial matter, the Court notes that any class action would not include the dismissed claims.  Accordingly, the motion is denied insofar as it seeks to certify a class action involving the Sixth Amendment claims against Defendants or the Eighth Amendment claims against named Defendants in their individual capacities.  Further, the motion is denied as premature to the extent that it seeks to certify a class action against the unnamed Defendants.[13]  These Defendants are yet to be identified and, consequently, the Court cannot determine at this juncture whether it would be appropriate to permit a class action to proceed against the unnamed Defendants.  At this time, the Court considers only whether it is appropriate to certify a class action involving the Eighth Amendment claims against the named Defendants in their official capacities for injunctive and declaratory relief.

The Court answers this question in the affirmative, with one caveat: because any injunctive relief granted would inherently inure to the benefit of only those prisoners who remain at SMT at

---

[12] Although Plaintiffs state in one sentence of the introduction section of their brief that they seek class certification pursuant to either Rule 23(b)(1) or (b)(3), the analysis section of their brief is composed entirely of arguments in support of certification under Rule 23(b)(3).  It is not the Court's job to supply Plaintiffs with arguments for certification under Rule 23(b)(1).  Thus, the Court considers only Plaintiffs' arguments for certification under Rule 23(b)(3).

[13] Although it is premature to consider whether any class action should include the unnamed Defendants, pursuant to Rule 23(c)(1)(A), the Court will consider at this time whether it is appropriate to certify the action against the named Defendants as a class action.  See Rule 23(c)(1)(A) ("At an early practicable time after a person sues or is sued as a class representative, the court must determine by order whether to certify the action as a class action.").

the conclusion of this lawsuit, it would make no sense to include other prisoners in the class definition. Accordingly, the Court will limit the class definition to all persons who were incarcerated within SMT on or after March 13, 2020 and remain incarcerated at SMT as of the date that this action is dismissed or the date that judgment is entered.

This refined class definition withstands the named Defendants' arguments that class certification is inappropriate because (i) the proposed class is not ascertainable; (ii) the numerosity and commonality requirements of Rule 23(a) are not met; and (iii) the predominance and superiority requirements of Rule 23(b)(3) are not met.[14] The Court addresses each class action requirement in turn and concludes that Plaintiffs' motion to certify should be granted, using the refined class definition.

### i. Ascertainability

"Before a court may certify a class pursuant to Rule 23, the class definition must be sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member of the proposed class." Young v. Nationwide Mut. Ins. Co., 693 F.3d 532, 537–538 (6th Cir. 2012) (punctuation modified). "[A] class definition is impermissible where it is a 'fail-safe' class, that is, a class that cannot be defined until the case is resolved on its merits." Id. at 538 (citing Randleman v. Fidelity Nat'l Title Ins. Co., 646 F.3d 347, 352 (6th Cir. 2011)). "A 'fail-safe' class is one that includes only those who are entitled to relief." Id.

---

[14] As part of their argument that Rule 23(b)(3)'s predominance requirement is not satisfied, the named Defendants argued that individual issues concerning Plaintiffs' failure to exhaust their administrative remedies will predominate, therefore precluding class certification. Defs. Resp. to Mot. to Certify at 23–25. However, the named Defendants subsequently withdrew their exhaustion argument. See Notice (Dkt. 97). Further, the named Defendants do not raise any exhaustion issues in their motion to dismiss. Accordingly, the Court will not address the issue of exhaustion. See Kramer v. Wilkinson, 226 F. App'x 461, 462 (6th Cir. 2017) (explaining that, because exhaustion is not a pleading requirement, a court cannot sua sponte dismiss a complaint on the basis of the plaintiff's failure to specifically plead and prove exhaustion).

The named Defendants argue that Plaintiffs' proposed class definition is overly-broad and, therefore, not administratively feasible because the class includes all individuals who have resided at SMT, including: (i) "prisoners who have suffered no actual harm" (ii) prisoners who "are no longer at risk of any harm, i.e., parolees, prisoners transferred out of SMT," and (iii) "prisoners transferred into SMT after already having recovered from COVID-19." Defs. Resp. at 6. Each argument is addressed and rejected in turn.

### a. Prisoners Who Have Suffered Harm

The named Defendants propose that the SMT prisoners who have "suffered no actual harm" are the "more than two-thirds of the SMT population [that] has tested negative for COVID-19." Id. at 7. Testing positive for COVID-19 cannot be the sole metric for who has suffered an "actual harm" as a result of MDOC's alleged failure to take sufficient safety precautions to protect inmates from COVID-19. As one court aptly observed, "even perfectly healthy [inmates] are seriously threatened by COVID-19" and, therefore, "it cannot be denied that the virus is gravely dangerous to all of us." Savino v. Souza, 453 F. Supp. 3d 441, 451 (D. Mass. 2020).

The Savino court's position is consistent with the Eighth Amendment's requirement that prison officials have a duty to "'take reasonable measures to guarantee the safety of the inmates.'" Farmer, 511 U.S. at 832 (quoting Hudson v. Palmer, 468 U.S. 517, 526–527 (1984)). As a result of this requirement, "the Eighth Amendment protects against future harms to inmates," Helling v. McKinney, 509 U.S. 25, 33 (1993). Put differently, "a remedy for unsafe conditions need not await a tragic event." Id. Accordingly, courts have held that class actions in the prison context are properly certified even where not all inmates have contracted a communicable illness, provided that all inmates have been subjected to the same allegedly unconstitutional conditions or share a

common interest in enjoining the objectionable conduct.  See, e.g., Hagan v. Rogers, 570 F.3d 146, 158 (3d Cir. 2009).

In this case, Plaintiffs allege that they have all been subjected to Defendants' inadequate pandemic response that has heightened the inmates' exposure to COVID-19.  This is an actual harm.  Accordingly, the refined class definition would not fail for lack of ascertainability due to the inclusion of inmates who have not tested positive for the virus.

### b.  Prisoners no Longer at SMT

The Court has concluded that, at this time, class certification is only appropriate as to the portion of inmates in Plaintiffs' proposed class who remain incarcerated at SMT as of the date that this action is dismissed or the date that judgment is entered.  Such a class inherently excludes individuals who have left SMT, thereby mooting the named Defendants' argument that the class is overly broad due to the inclusion of parolees and prisoners who have been transferred out of SMT.

### c.  Prisoners Transferred to SMT After Recovering from COVID-19

The named Defendants' argument that the proposed class is unascertainable—on the theory that it includes "prisoners transferred into SMT after already having recovered from COVID-19"—appears to be premised on the view that reinfection from COVID-19 is unlikely.  At least one district court has rejected such an argument in certifying a class of inmates challenging COVID-19 prison conditions.  See Valentine v. Collier, No. 20-1115, 2020 WL 3491999, at *6 (S.D. Tex. June 27, 2020).  As that court explained, "it has not been scientifically shown that individuals who have recovered from COVID-19 are protected from reinfection, nor if they are conferred immunity, how long that immunity would last."  Id.  Thus, "even those individuals who

have recovered from COVID-19 may be at risk for reinfection later on, and so, [the] [d]efendants'
actions in preventing the spread of COVID-19 affect all members of the proposed class." Id.

The Valentine court's logic is supported by the CDC's current COVID-19 guidance and
the scientific literature cited by said guidance. The CDC's guidance reveals that most—but not
all—individuals who recover from COVID-19 develop anti-SARS-CoV-2 antibodies.[15] Further,
antibody responses may only be durable for a matter of months. Id. Additionally, "the probability
of SARS-CoV-2 reinfection is expected to increase with time after recovery from initial infection
because of waning immunity and the possibility of exposure to virus variants." Id.

Accordingly, the proposed class definition is not rendered unascertainable by the inclusion
of individuals who have transferred to SMT after contracting and recovering from the virus.

### ii. Rule 23(a) Requirements

The named Defendants contend the Rule 23(a) requirements of numerosity and
commonality are not met. The named Defendants do not contest that the Rule 23(a) requirements
of typicality and adequacy of representation are met. The Court addresses each of the Rule 23(a)
requirements and finds that all are satisfied.

### a. Numerosity

To satisfy the numerosity requirement, Plaintiffs need not specify the exact number of class
members but must show that the class is likely to be "so numerous that joinder of all members is
impracticable." Fed. R. Civ. P. 23(a)(1). Regarding the size of the class, "[w]hile no strict
numerical test exists, 'substantial' numbers of affected [individuals] are sufficient to satisfy this
requirement." Young v. Nationwide Mut. Ins. Co., 693 F.3d 532, 541 (6th Cir. 2012). "Courts

---

[15] CDC, "Interim Guidance on Duration of Isolation and Precautions for Adults with COVID-19,"
https://www.cdc.gov/coronavirus/2019-ncov/hcp/duration-isolation.html
[https://perma.cc/GM2F-D9WW].

within the Sixth Circuit have recently stated that the numerosity requirement is fulfilled when the number of class members exceeds forty." Busby v. Bonner, 466 F. Supp. 3d 821, 831 (W.D. Tenn. 2020) (punctuation modified).

The above factors favor finding that numerosity is satisfied. All potential class members are located at the same location, SMT. The maximum number of potential class members is easily determined by the number of inmates at SMT. As Plaintiffs provide, this number could be in the hundreds, given that SMT has the capacity to house 1,696 prisoners.[16] Presently, there are 53 named plaintiffs. See Am. Mot. to Certify at 12. This number clearly exceeds the 40-person threshold. Plaintiffs are able to meet the numerosity requirement.

The named Defendants argue that Plaintiffs do not meet the numerosity requirement because "Plaintiffs allege that the number of class members is potentially in the hundreds," but "the purpose of class actions is not to provide a blanket remedy for those who 'might' have been injured but were not." Defs. Resp. to Mot. to Certify at 13–14 (Dkt. 68). The crux of this argument is that not all inmates incarcerated at SMT have contracted COVID-19 as a result of Defendants' allegedly inadequate response to the pandemic. However, as explained above, infection with COVID-19 is not the proper metric for assessing which Plaintiffs were harmed; rather, the proper metric is whether SMT prisoners faced a serious risk of harm—i.e., an increased risk of contracting COVID-19—as a result of Defendants' allegedly inadequate safety measures. The answer to this question will be the same for all potential class members. Thus, the Court finds unpersuasive the named Defendants' argument that numerosity is not satisfied.

---

[16] MDOC, "Parnall Correctional Facility (SMT),"
https://www.michigan.gov/corrections/0,4551,7-119-68854_1381_1385-5339--,00.html
[https://perma.cc/F9HV-6BWZ].

### b.  Typicality

With respect to typicality, "a plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of the other class members, and if his or her claims are based on the same legal theory."  Powers v. Hamilton County Pub. Defender Comm'n, 501 F.3d 592, 618 (6th Cir. 2007) (quoting In re Am. Med. Sys., Inc., 75 F.3d at 1082). The class representatives in this case challenge the same practices giving rise to the claims of all class members—Defendants' allegedly inadequate response to the health dangers posed by the COVID-19 pandemic.  Typicality is, therefore, satisfied.

### c.  Adequacy of Representation

With respect to adequacy of representation, two requirements must be met: (i) class counsel must be qualified, experienced, and generally able to conduct the litigation; and (ii) the class representatives must not have interests that are antagonistic to the other class members.  Stout v. Byrider, 228 F.3d 709, 717 (6th Cir. 2000).  In this case, Plaintiffs' counsel, Alyson Oliver, has experience in complex litigation and represents she has the proper time, resources, and expertise to litigate the case.  Pls. Am. Mot. to Certify Class at 18–19.  Further, the class representatives' interests are aligned with the other class members' interests.  Thus, the adequate representation requirement is satisfied.

### d.  Commonality

Rule 23(a)(2) requires that "there [be] questions of law or fact common to the class."  Fed. R. Civ. P. 23(a)(2).  Specifically, "[c]ommonality requires the plaintiff to demonstrate that the class members 'have suffered the same injury.'"  Dukes, 131 S. Ct. at 2551 (quoting Gen. Tel. Co. of the Sw. v. Falcon, 457 U.S. 147, 157 (1982)).  However, this does not mean that plaintiffs may show commonality by asserting that they have all suffered a violation of the same provision of the

law.  Id. at 350.  Instead, "[w]hat matters to class certification . . . is not the raising of common 'questions'—even in droves—but, rather, the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation."  Id. (citation omitted).  "The mere fact that questions peculiar to each individual member of the class remain after the common questions of the defendant's liability have been resolved does not dictate the conclusion that a class action is impermissible."  Sterling v. Velsicol Chem. Corp., 855 F.2d 1188, 1197 (6th Cir. 1988).

Plaintiffs argue that there are questions of law and fact common to all class members, such as whether Defendants failed to provide adequate safety measures, including (i) isolating inmates with COVID-19, (ii) instituting contact tracing, (iii) supplying inmates with hand sanitizer and soap, (iv) performing sanitization, (v) providing inmates with a safe method to launder cloth masks, and minimizing crowds).  Pls. Am. Mot. to Certify Class at 13–15.  Plaintiffs further argue that the appropriateness of injunctive relief is common to all class members.  Id. at 15.

The named Defendants argue that the commonality requirement is not met, because Plaintiffs' proposed class definition includes "different types of potential class members (current inmates, parolees, transferees), each with varying (if any) risk levels . . . ."  Defs. Resp. to Am. Mot. to Certify at 6–7.  As provided above, the Court declines to certify a class that would include individuals no longer incarcerated at SMT such as transferees and parolees.  The named Defendants' argument that the inclusion of such members in the class would defeat commonality is, therefore, moot.

Further, the named Defendants are incorrect that Plaintiffs' varying levels of exposure to or risk of contracting COVID-19 defeats commonality.  Several district courts have rejected this precise argument.  See, e.g., Criswell v. Boudreaux, No. 20-01048, 2020 WL 5235675, at *13 (E.D. Cal. Sept. 2, 2020); Savino, 453 F. Supp. 3d at 451.  As these courts have held, the

27

commonality requirement is satisfied where the incarcerated plaintiffs are allegedly "subject to the same practices and lack of policies related to social distancing, testing, and legal visits." Criswell, 2020 WL 5235675 at *13. This is so even where prisoners have varying risks of contracting the virus. Such variation "does not defeat commonality or typicality" because "[a]t bottom, a common question of law and fact . . . is whether the government must modify the conditions of confinement . . . such that . . . all those held in the facility will not face a constitutionally violative 'substantial risk of serious harm.'" Savino, 453 F. Supp. 3d at 451 (D. Mass. 2020) (quoting Farmer, 511 U.S. at 847). Moreover, even though prisoners may face varying health risks based on their differing underlying health conditions, "even perfectly healthy detainees are seriously threatened by COVID-19." Id.

In this case, all prisoners currently incarcerated at SMT are subjected to the same policies and practices that allegedly create a substantial risk of contracting COVID-19. Since Plaintiffs have set forth numerous common contentions regarding these individuals, the truth or falsity can be determined in one stroke. Either each of the policies and practices is unlawful as to the current inmates or it is not. That inquiry does not require the Court to determine the effect of those policies and practices upon any individual class member or to undertake any other kind of individualized determination, in an action seeking only injunctive relief as to current inmates. There is only a single answer to questions such as whether Defendants' failure to provide any hand sanitizer places current inmates at an increased risk of contracting COVID-19.[17]

---

[17] Although Plaintiffs' Sixth Amendment claims have been dismissed and, therefore, do not present any barriers to class certification, the Court notes that these claims would clearly not satisfy the commonality requirement. As discussed above, to succeed on their Sixth Amendment claims, Plaintiffs would have to show "actual injuries" that they suffered as a result of the restrictive policies. Lewis, 518 U.S. at 351. The actual injury inquiry would inherently vary from individual to individual. For instance, regarding the library access claim, the actual injury inquiry would vary

### iii.  Rule 23(b) Requirements

The proposed class must also meet one of the three requirements in Rule 23(b).  Here, Plaintiffs seek class certification under Rule 23(b)(3), which requires that "questions of law or fact common to class members predominate over any questions affecting only individual members," and that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).  These are commonly known as the "predominance" and "superiority" requirements.  The named Defendants contend that neither requirement is met. The Court addresses each requirement in turn and concludes that the refined class definition satisfies both requirements.

### a.  Predominance

"In discerning whether a putative class meets the predominance inquiry, courts are to assess 'the legal or factual questions that qualify each class member's case as a genuine controversy,' and assess whether those questions are 'subject to generalized proof, and thus applicable to the class as a whole.'" Sandusky Wellness Center, LLC v. ASD Specialty Healthcare, Inc., 863 F.3d 460, 468 (6th Cir. 2017) (quoting Amchem Products, Inc. v. Windsor, 521 U.S. 591, 594 (1997)). The distinction between "individual" and "common" questions is central to the predominance analysis.  An individual question is "one where members of a proposed class will need to present evidence that varies from member to member."  Tyson Foods, Inc. v. Bouaphakeo, 136 S. Ct. 1036, 1045 (2016) (punctuation modified).  Conversely, "[i]f the same evidence will suffice for each member to make a prima facie showing, then it becomes a common question."  Sandusky Wellness Ctr., 863 F.3d at 468 (punctuation modified).

---

based on each inmate's distinct difficulty flowing from his or her separate legal action outside of this case.

"Considering whether questions of law or fact common to class members predominate begins . . . with the elements of the underlying cause of action."  Erica P. John Fund, Inc. v. Halliburton Co., 563 U.S. 804, 809 (2011) (punctuation modified).  The Court thus considers the elements of Plaintiffs' Eighth Amendment claims—the only claims that survive the motion to dismiss.  To prove a violation of the Eighth Amendment, an inmate must prove that a prison official (i) acted with deliberate indifference and (ii) exposed the inmate to a substantial risk of harm to his health or safety.  Farmer, 511 U.S. at 834.  Plaintiffs contend that common evidence—such as executive orders issued by Governor Whitmer, interim guidance issued by the CDC, and MDOC's COVID-19 preparedness plan—will establish that Defendants' inadequate safety measures exposed Plaintiffs to a serious risk of illness or death.  Pls. Am. Mot. to Certify at 22.  Plaintiffs further contend that common evidence—such as evidence that Defendants failed to provide Plaintiffs with hand sanitizer—will establish Defendants' conduct constituted deliberate indifference.  Id. at 23.

The named Defendants contend that Plaintiffs' argument that common questions of law and fact predominate over individual questions "rests on a faulty premise, by assuming that they have stated an actionable Eighth and Fourteenth Amendment deliberate indifference claim."  Defs. Resp. to Pls. Mot. to Certify at 12.  However, as explained above, Plaintiffs have sufficiently alleged Eighth Amendment claims.  The named Defendants' argument against predominance is, therefore, moot.

As Plaintiffs argue, the same evidence will suffice to show that Defendants violated each Plaintiff's Eighth Amendment rights.  Further, there is no concern that individual questions will predominate over common questions of law and fact on the issue of recovery, as the Court is only certifying a class action for injunctive relief.  See Dukes, 131 S. Ct. at 2558 ("When a class seeks

an indivisible injunction benefiting all its members at once, there is no reason to undertake a case-specific inquiry into whether class issues predominate or whether class action is a superior method of adjudicating the dispute.").  Therefore, the predominance requirement is met.

### b. Superiority

Rule 23(b)(3)'s superiority requirement asks whether a "class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  It aims to "achieve economies of time, effort, and expense, and promote . . . uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." Amchem Prods., 521 U.S. at 615.  The Sixth Circuit's caselaw instructs district courts to consider several factors in conducting the superiority analysis:

> To determine whether a class action is the superior method for fair and efficient adjudication, the district court should consider the difficulties of managing a class action.  The district court should also compare other means of disposing of the suit to determine if a class action is sufficiently effective to justify the expenditure of the judicial time and energy that is necessary to adjudicate a class action and to assume the risk of prejudice to the rights of those who are not directly before the court.  Additionally, the court should consider the value of individual damage awards, as small awards weigh in favor of class suits.

Pipefitters, 654 F.3d at 630–631 (punctuation modified, citations omitted).  District courts also consider the related non-exhaustive factors set forth in Rule 23(b)(3) itself. Martin v. Behr Dayton Thermal Prods., LLC, 896 F.3d 405, 415–416 (6th Cir. 2018).  These factors include: (i) the class members' interests in individually controlling the prosecution or defense of separate actions; (ii) the extent and nature of any litigation concerning the controversy already begun by or against class members; (iii) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (iv) the likely difficulties in managing a class action.  Fed. R. Civ. P. 23(b)(3)(A)–(D).

The Court finds that superiority is met for three reasons.  First, superiority is "self-evident" where a class seeks an indivisible injunction benefiting all its members at once, as is the case here. See Dukes, 131 S. Ct. at 2558.  Second, as the parties agree, if common questions are found to predominate, courts generally also find the superiority requirement to be satisfied.  Compare Pls. Am. Mot. to Certify at 23–24 with Defs. Resp. to Pls. Am. Mot. to Certify at 20.  As discussed above, common questions predominate as to Plaintiffs' Eighth Amendment claims for injunctive relief.

Third, the factors set forth in Pipefitters and Rule 23(b)(3) favor finding that the refined class definition satisfies the superiority requirement.  The putative class members have little apparent interest in individually controlling the prosecution of separate actions.  Rather, because many precautions against contracting COVID-19 must inherently be taken on a community-wide level in order to provide individual protection, the putative class members have a decided interest in obtaining class-wide relief.  Notably, social distancing cannot be effective without group participation.  Next, to the Court's knowledge, no separate litigation concerning SMT's COVID-19 response has been initiated by any of the putative class members.  Additionally, putative class members are inmates who likely have few financial resources.  See 4/10/20 Order (granting Plaintiffs' motion for appointment of pro bono counsel).  These individuals would likely face considerable difficulty in prosecuting their cases individually if the litigation is not concentrated and managed by the pro bono counsel appointed to represent the class.  Finally, there are few if any apparent difficulties that would result from managing the class action.  To the contrary, it appears that far greater amounts of time and resources would be expended by the Court and the parties in dealing with individual cases.

### C.  Appointment of Class Counsel

"Unless a statute provides otherwise, a court that certifies a class must appoint class counsel." Fed. R. Civ. P. 23(g)(1).  In appointing class counsel, the Court "must" consider (i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class. Fed. R. Civ. P. 23(g)(1)(A).  In addition, the Court "may consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B).

Plaintiffs seek appointment of Ms. Oliver as class counsel.  To date, Ms. Oliver has dedicated significant time and resources towards investigating the claims involved in this action. In doing so, she has demonstrated competent knowledge of the applicable law.  Ms. Oliver has experience in complex litigation.  See Oliver Curriculum Vitae at 1–6 (Dkt. 77).  Further, she represents that she has the proper time, resources, and expertise to litigate the case.  Pls. Am. Mot. to Certify Class at 18–19.  Accordingly, Plaintiffs' motion is granted as to their request for appointment of Ms. Oliver as class counsel.

### IV. CONCLUSION

For the foregoing reasons, the motion to dismiss (Dkt. 87) is granted in part and denied in part.  Specifically, the motion is granted as to Plaintiffs' Sixth Amendment claims against Defendants in their individual and official capacities as well as Plaintiffs' Eighth Amendment claims against the named Defendants in their individual capacities.  The motion is denied as to Plaintiffs' Eighth Amendment claims against the named Defendants in their official capacities.

Plaintiffs' amended motion to certify class (Dkt. 77) is granted in part and denied in part. Plaintiffs' motion is denied as moot insofar as Plaintiffs seek inclusion of the dismissed claims in the class action.  In addition, the motion is denied as premature to the extent that Plaintiffs seek to bring the class action against the unnamed Defendants.

Thus, the Court will certify, at this time, a class action consisting of only Plaintiffs' Eighth Amendment claims against named Defendants in their official capacities for injunctive relief.  As for the class definition, the Court will not use the precise class definition proposed by Plaintiffs. The class definition will consist of only those persons who were incarcerated within SMT on or after March 13, 2020 and remain incarcerated at SMT as of the date that this action is dismissed or the date that judgment is entered.  Further, Plaintiffs' motion is granted to the extent that they seek appointment of Ms. Oliver as class counsel.  Pursuant to Rule 23(c)(1), the Court retains the power to amend and alter the class if appropriate.  Fed. R. Civ. P. 23(c)(1) ("An order that grants or denies class certification may be altered or amended before final judgment.").

Finally, Plaintiffs' original motion to certify class (Dkt. 60) is denied as moot.

SO ORDERED.

Dated:  June 15, 2021                              s/Mark A. Goldsmith
      Detroit, Michigan                        MARK A. GOLDSMITH
                                        United States District Judge